UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| GRACE MARINE, <br> a/k/a GRACE V. GARCIA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL J. ASTRUE, Commissioner <br> of the Social Security Administration, <br><br> Defendant. | § § § § § § § § § § § § | CIVIL ACTION NO. <br><br> SA-09-CV-0836 XR (NN) |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO: Honorable Xavier Rodriguez
    United States District Judge

**Introduction**

Plaintiff Grace Marine brought this action for judicial review of the final decision of the Commissioner of the Social Security Administration (the Commissioner), determining that Marine is not disabled for the purposes of the Social Security Act (the Act) and denying Marine's applications for Disability Income Benefits (DIB) and Supplemental Security Insurance (SSI). Marine asked the district court to reverse the Commissioner's decision and to render judgment in her favor.[1] In the alternative, Marine asked the court to remand the case for further proceedings.

After considering Marine's brief in support of her complaint,[2] the brief in support of the

---

[1] Docket entry # 1.

[2] Docket entry # 7.

Commissioner's decision,[3] the record of the SSA proceedings, the pleadings on file, the applicable case authority and relevant statutory and regulatory provisions, and the entire record in this matter, I recommend affirming the Commissioner's decision.

I have jurisdiction to enter this report and recommendation under 28 U.S.C. § 636(b) and this district's general order, dated July 17, 1981, referring for disposition by recommendation all cases where a plaintiff seeks review of the Commissioner's denial of the plaintiff's application for benefits.[4]

## Jurisdiction

The district court has jurisdiction to review the Commissioner's final decision as provided by 42 U.S.C. §§ 405(g), 1383(c)(3).

## Administrative Proceedings

Based on the record, Marine exhausted her administrative remedies prior to filing this action in federal court. Marine applied for disability benefits on March 23, 2007, alleging disability beginning on December 28, 2004.[5] Marine's alleged on-set date is the day after she was medically discharged from the Army. The Commissioner denied Marine's applications initially and on reconsideration.[6] Marine then asked for a hearing before an ALJ.[7] An ALJ held

---

[3] Docket entry # 9.

[4] *See* Local Rules for the Western District of Texas, appx. C, p. 10.

[5] SSA record, pp. 135 & 140.

[6] *Id*. at pp. 60-63.

[7] *Id*. at p. 72.

a hearing on September 8, 2008.[8]  The ALJ issued a decision on March 4, 2009, concluding that Marine is not disabled within the meaning of the Act.[9]  Marine asked the Appeals Council to review the decision.[10]  On August 14, 2009, the Appeals Council declined to review the decision, determining no reason existed for a review.[11]  The ALJ's decision became the final decision of the Commissioner for the purpose of the district court's review pursuant to 42 U.S.C. § 405(g). Marine filed this action on October 13, 2009, seeking review of the Commissioner's decision.[12]

### Issues Presented

> Is the ALJ's decision that Marine is not under a "disability," as defined by the Act, supported by substantial evidence and does the decision comport with relevant legal standards?

### Analysis

**A. Standard of Review**

In reviewing the Commissioner's decision denying disability benefits, the reviewing court is limited to determining whether substantial evidence supports the decision and whether the Commissioner applied the proper legal standards in evaluating the evidence.[13]  "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a

---

[8]*Id*. at p. 19.

[9]*Id*. at p.17.

[10]*Id*. at p. 4.

[11]*Id*. at p. 1.

[12]Docket entry # 1.

[13]*Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995); 42 U.S.C. §§ 405(g), 1383(c)(3).

reasonable mind might accept as adequate to support a conclusion."[14] Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'"[15]

If the Commissioner's findings are supported by substantial evidence, then they are conclusive and must be affirmed.[16] In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from reweighing the evidence or substituting its judgment for that of the Commissioner.[17] Conflicts in the evidence and credibility assessments are for the Commissioner and not for the courts to resolve.[18] Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience.[19]

**1. Entitlement to Benefits**

---

[14] *Villa v. Sullivan*, 895 F.2d 1019, 1021-22 (5th Cir. 1990) (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)).

[15] *Abshire v. Bowen*, 848 F.2d 638, 640 (5th Cir. 1988) (quoting *Hames*, 707 F.2d at 164).

[16] *Martinez*, 64 F.3d at 173.

[17] *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995); *see also Villa*, 895 F.2d at 1021 (The court is not to reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.).

[18] *Martinez*, 64 F.3d at 174.

[19] *Id*.

Every individual who meets certain income and resource requirements, has filed an application for benefits, and is under a disability, is eligible to receive benefits.[20] The term "disabled" or "disability" means the inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[21] A claimant shall be determined to be disabled only if his physical or mental impairment or impairments are so severe that she is unable to not only do her previous work, but cannot, considering her age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if she applied for work.[22]

**2. Evaluation Process and Burden of Proof**

The Commissioner's regulations provide that disability claims are to be evaluated according to a five-step process.[23] A finding that a claimant is disabled or not disabled at any point in the process is conclusive and terminates the Commissioner's analysis.[24]

The first step involves determining whether the claimant is currently engaged in

---

[20] 42 U.S.C. § 1382(a)(1) & (2).

[21] 42 U.S.C. § 1382c(a)(3)(A).

[22] 42 U.S.C. § 1382c(a)(3)(B).

[23] 20 C.F.R. §§ 404.1520 and 416.920.

[24] *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995).

substantial gainful activity.[25] If so, the claimant will be found not disabled regardless of her medical condition or her age, education, or work experience.[26] The second step involves determining whether the claimant's impairment is severe.[27] If it is not severe, the claimant is deemed not disabled.[28] In the third step, the Commissioner compares the severe impairment with those on a list of specific impairments.[29] If it meets or equals a listed impairment, the claimant is deemed disabled without considering her age, education, or work experience.[30] If the impairment is not on the list, the Commissioner, in the fourth step, reviews the claimant's residual functional capacity (RFC) and the demands of her past work.[31] If the claimant is still able to do her past work, the claimant is not disabled.[32] If the claimant cannot perform her past work, the Commissioner moves to the fifth and final step of evaluating the claimant's ability, given her residual capacities, age, education, and work experience, to do other work.[33] If the claimant cannot do other work, she will be found disabled. The claimant bears the burden of proof at the

---

[25] 20 C.F.R. §§ 404.1520 and 416.920.

[26] *Id.*

[27] *Id.*

[28] *Id.*

[29] *Id.*

[30] *Id.*

[31] *Id.*

[32] *Id.*

[33] *Id.*

first four steps of the sequential analysis.[34] Once the claimant has shown that she is unable to perform her previous work, the burden shifts to the Commissioner to show that there is other substantial gainful employment available that the claimant is not only physically able to perform, but also, taking into account his exertional and nonexertional limitations, able to maintain for a significant period of time.[35] If the Commissioner adequately points to potential alternative employment, the burden shifts back to the claimant to prove that she is unable to perform the alternative work.[36]

**B. Findings and Conclusions of the ALJ**

In this case, the ALJ reached his decision at step four of the decision-making process. The ALJ first determined that Marine was insured for DIB through December 31, 2009.[37] At step one, the ALJ determined that Marine has not engaged in any gainful activity since December 28, 2004—the day Marine was discharged from the Army.[38] At step two, the ALJ determined that Marine has the following severe impairments: degenerative joint disease, degenerative disc disease of the lumbar spine, past traumatic stress disorder, and depressive disorder.[39] At step

---

[34] *Leggett*, 67 F.3d at 564.

[35] *Watson v. Barnhart*, 288 F.3d 212, 217 (5th Cir. 2002).

[36] *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989).

[37] To be eligible for DIB, a person must be fully insured. *See* 20 C.F.R. § 404.110. "To be fully insured, a person needs at least six quarters of coverage, but not more than forty quarters of coverage." Nat'l Org. of. Soc. Sec. Claimants Representatives, 1-2 Soc. Sec. Practice Guide § 2.03 (LexisNexis). The formula for determining fully insured status is more complicated, but Marine does not challenge the Commissioner's determination about her date last insured.

[38] SSA record, p. 10.

[39] *Id*.

three, the ALJ determined that these impairments do not meet or medically equal an impairment listed in 20 C.F.R. Part 404, subpart P, appendix 1.[40] At step four, the ALJ determined that Marine can do her past relevant work as a retail clerk.[41] Although not required to do so, the ALJ applied the grid rules applicable to step five and explained why jobs exist in national economy that Marine can perform.[42] The ALJ concluded that Marine is not disabled under the Act.[41]

## C. Marine's Allegations of Error

Despite the 1200-page record in this case, Marine does not challenge the sufficiency of the evidence supporting the ALJ's decision. Most of the record consists of duplicate medical records and administrative paperwork associated with Marine's applications. Nevertheless, a summary of the evidence will assist the district court in its consideration of this case.

Marine enlisted in the Army shortly after high school. She worked as a military policewoman. Marine's right leg was injured at the shooting range when a piece of shrapnel ricocheted off a vehicle and struck her in the right thigh.[40] At the time, Marine's unit was preparing to deploy to Iraq, but because she was pregnant, Marine did not deploy. Marine was medically discharged two or three years after the gun accident, with a 10% disability rating from the Veterans Administration. The record doesn't identify the basis for the disability rating, but it's reasonable to assume the right-leg injury served as the basis for the rating because Marine

---

[40]*Id*. at p. 11.

[41]*Id*. at p. 16.

[42]*Id*.

[41]*Id*. at p. 17.

[40]*Id*. at p. 28.

identified no other service-connected injury or medical condition. Working for two or three years after the injury indicates the right-leg injury did not prevent Marine from working, although her discharge indicates she was unfit to perform her military duties as a military policewoman.[41]

Over two years after being discharged, at age 26, Marine applied for disability benefits based on carpal tunnel syndrome, a nerve disorder and rheumatoid arthritis. No objective medical evidence supports these alleged conditions.[42] Later on, Marine based disability on depression, post traumatic stress disorder, panic disorder, low back pain, and dropped foot.[43] No objective medical evidence supports the allegations of low back pain[44] or dropped foot.[45] The medical expert who testified at Marine's hearing summarized the medical evidence of physical impairment: "[T]his is almost entirely a psychological case. . . . [T]he physical findings in this case are just almost nil. . . . [Marine has] had a number of labels placed on her for which there is

---

[41]Dep't of Def. Directive No. 1332.18: Separation or Retirement for Physical Disability ¶3.3 ("The sole standard to be used in making determinations of unfitness due to physical disability shall be unfitness to perform the duties of the member's office, grade, rank or rating because of disease or injury."), *available at* www.dtic.mil/whs/directives/corres/pdf/133218p.pdf .

[42]SSA record, p. 223 (June 13, 2006 EMG reflected no evidence of nerve injury); pp. 476 (May 17, 2007 nerve conduction studies showed no evidence of carpal tunnel syndrome on right hand); p. 718 (reporting spine was painful at upper ranges of motion in thoracolumbar spine).

[43]*Id*. at p. 195.

[44]*Id*. at p. 327 (in May 17, 2006, no gross abnormality in lower back); p. 412 (Jul 19, 2007 MRI of lumbar spine showed right lateral disc bulge at the L5/S1 causing mild neural foramina stenosis); pp. 888-891 (Dec. 10, 2007 radiology reports showed no gross abnormality in hands, or spine; congenial bony defect involving S1, but otherwise unremarkable study); p. 1170-71 (Oct. 15, 2008 X-rays of hands and elbows showed no fracture, dislocation or joint abnormality and no evidence of inflammatory or degenerative arthritis).

[45]*Id*. at p. 657 (on Jan 9, 2008, no abnormalities detected in either foot; no abnormalities detected in heel walking, general gait or toe walking).

absolutely no evidence in the chart."[46]

As for the objective medical evidence about mental impairment, a second medical expert—a psychologist—testified that Marine had undergone treatment for panic attacks, depression and possible post-traumatic disorder for seven months and recommended a psychological clinical evaluation.[47] The ALJ agreed and sent Marine for an evaluation. The examining psychologist—Dr. Sean Connolly—opined that Marine is not limited in the ability to understand and remember simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, or make judgments on complex work-related decisions.[48] The psychologist further opined that Marine is moderately restricted in the ability to interact with the public, supervisors, and co-workers; and respond appropriately to usual work situations and to changes in a routine work setting.[49] After receiving the consulting doctor's report, the ALJ determined that Marine can perform light work, with a moderate limitation in interacting with the public, supervisors, and co-workers; and responding appropriately to changes in a usual work situation or changes in routine work setting.[50]

**The ALJ did not make a reversable error by failing to conduct a supplemental hearing**. The ALJ's consideration of the post-hearing psychological evaluation forms the basis

---

[46]SSA record, p. 44.

[47]*Id*. at pp. 54-55.

[48]*Id*. at p. 878.

[49]*Id*. at p. 879.

[50]*Id*. at p. 13.

of Marine's allegation of error. Marine complains that the ALJ did not conduct a supplemental hearing after receiving the post-hearing psychological evaluation. She relies on section I-2-5-44 of the SSA's *Hearings, Appeals and Litigation Law Manual* (HALLEX),[51] which provides the following: "If the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision." The applicable section appears to be section I-2-7-30 (Proffer Procedures) because that instruction applies to post-hearing evidence, but the mistake doesn't affect Marine's argument because section I-2-7-30 contains the same language.[52] Because Marine does not question the sufficiency of the evidence, her challenge takes the form of legal error.

In this case, Marine asked for a supplemental hearing, but the ALJ did not conduct a supplemental hearing. Instead, he incorporated the limitations contained in the psychological report into the determination of residual functional capacity. This response shows the ALJ did not comply with section I-2-7-30 because the ALJ did not receive additional documentary evidence supporting a fully favorable decision. Although the ALJ did not comply with section I-2-7-30, Marine's argument fails because the Fifth Circuit has determined that the "HALLEX

---

[51]"Through HALLEX, the Associate Commissioner of Hearings and Appeals conveys guiding principles, procedural guidance and information to the Office of Hearings and Appeals (OHA) staff. HALLEX includes policy statements resulting from an Appeals Council en banc meeting under the authority of the Appeals Council Chair. It also defines procedures for carrying out policy and provides guidance for processing and adjudicating claims at the Hearing, Appeals Council and Civil Actions levels." Dep't of Health & Human Services, Soc. Sec. Admin., *Hearings, Appeals & Litig. Law* § I-1-000.

[52]*See* Dep't of Health & Human Services, Soc. Sec. Admin., *Hearings, Appeals & Litig. Law* § I-2-7-30 ("If the claimant requests a supplemental hearing, the ALJ must grant the request, unless the ALJ receives additional documentary evidence that supports a fully favorable decision.").

does not carry the authority of law. . . ."[53]  "While HALLEX does not carry the authority of law, . . . 'where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required.' If prejudice results from a violation, the result cannot stand."[54]

"In this case, [Marine] failed to either show . . . any prejudice resulting from the ALJ's failure to grant a supplemental hearing. [Marine] failed to proffer any evidence whatsoever that could and would have been adduced during a supplemental hearing that would have led to a different result in this case."[55] The only mental health treatment note subsequent to Marine's hearing reported that Marine did not attend her appointment with her treating psychologist.[56] Marine cannot show she was prejudiced by the procedural violation because the ALJ incorporated the non-exertional limitations reflected in the report of the psychological examination into the determination of residual functional capacity.

Although Marine argues that the ALJ never explained the decision not to grant a

---

[53] *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000). *See also Bordes v. Comm'r of Soc. Sec.*, 235 Fed. App'x 853, 859 (3d Cir. 2007) (stating that the HALLEX provisions "lack the force of law and create no judicially-enforceable rights"); *Melvin v. Astrue*, 602 F. Supp. 2d 694, 704 (E.D.N.C. 2009) ("As an internal guidance tool, HALLEX lacks the force of law. Thus, the court rejects claimant's reliance on the ALJ's alleged failure to comply with HALLEX . . . ."); *Childs v. Astrue*, No. 2:07CV945-SRW, 2009 WL 902614, 6 (M.D. Ala. Mar. 31, 2009) ("The court concludes that violation of HALLEX provisions do not provide an independent basis for relief against the Commissioner."); *Thornton v. Barnhart*, No. Civ. A. 505CV00055, 2006 WL 759672, 11 (W.D. Va. Mar. 21, 2006) ("It appears that the Ninth Circuit has concluded that HALLEX is purely an internal manual to guide the Office of Hearings and Appeals staff and does not have any legal force.").

[54] *Newton*, 209 F.3d at 459.

[55] *Lindsey v. Comm'r of Soc. Sec.*, No. CIV.A. 2:08CV233WAPD, 2009 WL 4738168, 6 (N.D. Miss. Dec. 4, 2009).

[56] SSA record, p. 1193.

supplemental hearing, the explanation is implicit in the ALJ's decision. The ALJ stated the following about the post-hearing psychological examination:

> [Marine] informed Dr. Connolly that she did not relate with neighbors or friends. However, she was cooperative, pleasant, and established good [rapport] at her examinations. . . . Her GAF was elevated to 62 and she was stable on her medications. . . . At the hearing, the medical expert testified that claimant had suffered only 7 months of panic attacks and was controlled on her medication by February 2008. Dr. Connolly's examination did not reveal claimant[] to have significant symptoms, despite a return to a GAF score of 52. . . . Claimant has been diagnosed with histrionic features, which indicates symptom magnification. By and large, the evidence reveals very little in the way of objective medical evidence.[57]

The ALJ's reason for not conducting a supplemental hearing is implicit in this explanation—there was no reason for a hearing because Marine lacked significant symptoms and little objective medical evidence supported Marine's assertion that she is unable to work due to mental impairment. In making the GAF of 52, Dr. Connolly characterized the assessment as serious difficulties in social and occupational functioning, but according to the DSM-IV, a score of 52 equates to moderate difficulty in social or occupational functioning. The ALJ's residual functioning capacity assessment reflects moderate difficulty in social or occupational functioning. Because the ALJ's determination about residual functional capacity is consistent with the post-hearing psychological examination, the Commissioner's failure to address the evidence with greater specificity did not affect Marine's rights. The ALJ did not make an error of law by not conducting a supplemental hearing because the HALLEX does not carry the force of law and Marine failed to show prejudice from the failure to conduct a supplemental hearing.

**The ALJ did not err by relying on vocational expert testimony**. Marine also contends

---

[57]SSA record, pp. 14-15.

the ALJ relied on an unreliable opinion by a vocational expert; specifically, a vocational expert who did not have the advantage of post-opinion treatment records and the post-hearing psychological examination. Marine maintains the ALJ erred by relying on the expert opinion because she suffers from non-exertional impairments that the vocational expert did not consider. Marine also complained that she did not have the opportunity to challenge the qualifications of the expert. Because Marine does not question the sufficiency of the evidence, this challenge takes the form of legal error.

Marine's argument fails because the ALJ determined at step four that she can perform her past relevant work as a retail clerk and because vocational expert opinion is irrelevant to step four. At step four, the ALJ must determine whether the claimant can perform her past relevant work.[58] This task requires the ALJ to compare the claimant's residual functional capacity assessment with the physical and mental demands of the claimant's past relevant work.[59] If the ALJ determines the claimant can perform her past relevant work, the disability-determination process ends. If the ALJ determines the claimant cannot perform her past relevant work, the ALJ continues to step five.

In this case, the ALJ determined Marine has the following residual functional capacity: Marine can lift/carry 20 pounds occasionally and 10 pounds frequently; stand/walk up to 6 hours in an 8-hour day; and sit up to 6 hours in an 8 hour day; moderate limitation in interacting with the public, supervisors, and co-workers; and moderate limitation in responding appropriately to

---

[58] 20 C.F.R. §§ 404.1520(f), § 416.920(f).

[59] *Id.*

changes in a usual work situation or changes in routine work setting.[60]  The ALJ supported this determination with a three-page discussion of the medical evidence and an explanation of the evidence's implications.[61]

The ALJ then considered whether Marine can perform her past relevant work.  The ALJ determined that Marine can work in her past work as a retail clerk (i.e., a customer service representative at Blockbuster).  This determination is consistent with the ALJ's determination of Marine's residual functional capacity because the Dictionary of Occupational Titles classifies a retail customer service representative as light work.[62]  Light work requires the strength to exert up to 20 pounds of force occasionally, and/or up to 10 pounds of force frequently, and/or a negligible amount of force constantly.[63]

"When an ALJ finds that a claimant is capable of performing [her] past relevant work, the lack of expert testimony becomes irrelevant."[64]

> The fourth step of the sequential evaluation process provides that [Marine] must demonstrate that her impairment prevents her from returning to her past relevant work.  [Marine] bore the burden and failed to carry it and present[ed] . . . no relevant record cite to medical evidence to undermine the ALJ's conclusion.  Moreover, it is well-settled law that an ALJ need not consult a vocational expert at step four of the sequential evaluation.[65]

---

[60]SSA record, p. 13.

[61]*Id*. at pp. 13-16.

[62]Dictionary of Occupational Titles, code 299.367-010.

[63]*Id*., app'x C.

[64]*Thomas v. Astrue*, No. 6:07-CV-053-C ECF, 2009 WL 2777867, at *7 (N.D. Tex. Aug. 31, 2009).

[65]*Dennison v. Astrue*, No. 08-4677, 2010 WL 744935, at *9-10 (E.D. La. Mar. 1, 2010).

"The use of a vocational expert is appropriate only if the analysis moves to step five and a determination must be made of whether the claimant's skills can be used in other work and of what other specific jobs are possible for the claimant and available to her."[66] Because the ALJ determined that Marine can perform her past relevant work as a retail clerk,[67] Marine's argument about reliance on vocational testimony fails.[68]

To the extent Marine complains that vocational expert Olsen did not consider post-opinion treatment records and the post-hearing psychological examination, such consideration would not change the result because the post-opinion treatment notes establish that Marine was stable on her psychotropic medications[69] and the ALJ incorporated the mental limitations in the

---

[66]*Ramey v. Sullivan*, No. 91-4237, 1992 WL 314907, at *5 (E.D. La. Oct. 21, 1992).

[67]SSA record, p. 16, ¶ 6 ("In comparing the claimant's residual functional capacity with the physical and mental demands of [Marine's past work], the undersigned finds that the claimant is able to perform her past relevant work as a retail clerk as actually and generally performed.").

> The Regulations provide that, if the fourth step of the sequential analysis set forth in §§ 404.1520 and 416.920 is reached, the ALJ is required to determine a claimant's RFC which is defined as what the claimant can still do despite her limitations. Once that assessment is made, the ALJ then compares the demands of the claimant's past work with her present capabilities to determine if prior jobs can be performed. The demands of a claimant's past work can be based on descriptions of prior jobs as actually performed or as generally performed in the national economy. The determination of whether a claimant can perform her past work can even be made by the ALJ without vocational testimony.

*Laurent v. Astrue*, No. 07-3831, 2009 WL 959463, at *11 (E.D. La. Mar. 26, 2009).

[68]*See Williams v. Califano*, 590 F.2d 1332, 1334 (5th Cir. 1979) ("Vocational testimony is not necessary if the administrative law judge concludes that a claimant could return to his former occupation."); *Nicholson v. Massanari*, No. 00-31370, 2001 WL 564157, at *1 (5th Cir. May 18, 2001) ("When, as here, the Commissioner finds that a claimant can perform past relevant work, vocational testimony is not required.").

[69]SSA record, p. 723.

post-hearing examination in the determination of residual functional capacity. The ALJ did not make an error of law in the step-four determination.[70]

**Recommendation**. Because the ALJ did not make a legal error, I recommend affirming the Commissioner's decision. I also recommend affirming the decision because substantial evidence supports the decision.[71]

**Instructions for Service and Notice of Right to Object/Appeal**. The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested. Written objections to this report and recommendation must be filed within 14 days

---

[70] *Accord Moss v. Apfel*, No. 98-20215, 1999 WL 130146, at *1 (5th Cir. Feb. 12, 1999) ("The ALJ found that Moss could perform past work, and thus vocation testimony was not necessary."); *Ramey v. Sullivan*, No. 91-4237, 1992 WL 314907, at *5 (E.D. La. Oct. 21, 1992) ("Vocational testimony is not necessary if the ALJ concludes that a claimant could return to her former employment. The use of a vocational expert is appropriate only if the analysis moves to step five and a determination must be made of whether the claimant"s skills can be used in other work and of what other specific jobs are possible for the claimant and available to her.").

[71] *See* SSA record, p. 392 (physical residual functional capacity assessment, by Dr. Kavitha Reddy, dated May 5, 2007, opining that Marine can occasionally lift/carry 20 pounds and frequently lift/carry 10 pounds; stand/walk for about 6 hours in an 8-hour day; sit for about 6 hours in an 8-hour workday; unlimited in pushing/pulling, other than indicated for lift/carry); p. 488-500 (psychiatric review technique, by Dr. Charles Lankford, dated Sept. 28, 2007, reporting that Marine's symptoms and laboratory findings substantiate presence of depression and panic disorder, but alleged severity and limiting effects are not wholly supported by the medical evidence); p. 504 (mental residual functional capacity assessment, by Dr. Lankford, dated Sept. 28, 2007, opining that Marine can understand, remember and carry out detailed but not complex instructions; make decisions, attend and concentrate for extended periods; accept instructions; and respond to changes in work setting); p. 878 (medical source statement of ability to do work-related activities (mental), by Dr. Connolly, dated Oct. 24, 2008, stating that Marine is not limited in the ability to understand and remember simple instructions, make judgments on simple work-related decisions, understand and remember complex instructions, carry out complex instructions, or make judgment on complex work-related decisions).

after being served with a copy of same, unless this time period is modified by the district court.[72] Such party shall file the objections with the clerk of the court, and serve the objections on all other parties and the magistrate judge. A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections. A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.[73] Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.[74]

    **SIGNED** on January 7, 2011.

*[signature]*
NANCY STEIN NOWAK
UNITED STATES MAGISTRATE JUDGE

---

[72] 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b).

[73] *Thomas v. Arn*, 474 U.S. 140, 149-152 (1985); *Acuña v. Brown & Root*, 200 F.3d 335, 340 (5th Cir. 2000).

[74] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).